United States District Court
Southern District of Texas

**ENTERED**

April 04, 2024

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ROBERT GENE WILL, II, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 15-CV-3474 |
| | § | |
| BOBBY LUMPKIN, Director, Texas | § | |
| Department of Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND ORDER

In this successive federal habeas corpus action, Robert Gene Will, II, seeks relief from his Texas capital conviction and death sentence. After several years of litigation, the parties have finally fully briefed the question of whether the Texas courts unreasonably denied Will's claim that the State suppressed material contrary to *Brady v. Maryland*, 373 U.S. 83 (1963). The Court finds that the state-court decision was contrary to federal law. The litigation will proceed as discussed below.

## Background

The matters raised in the instant lawsuit are the culmination of two decades of litigation. Courts have previously described the underlying facts in great detail; there is no need to recount it for purposes of the matter now before this Court. *See In re Will*, 970 F.3d 536, 544–48 (5th Cir. 2020); *Will v. Thaler*, No. H-07-CV-1000, 2010 WL 2179680, at *1–4 (S.D. Tex. May 25, 2010); *Will v. State*, No. 74,306, 2004 WL 3093238, at *1 (Tex. Crim. App. Apr. 21, 2004); Dkt. 57-74 at 155–66). Over the years, Will's challenges to his culpability have followed a constant theme: that his co-defendant Michael Rosario is the

man who shot Harris County Police Deputy Barrett Hill on the morning of December 4, 2000. Will's overarching theory about the events of that morning has remained constant, yet the evidence on which he bases his claims has shifted with time. The question has always been whether, as two police officers chased Will and Rosario in different directions, Rosario circled back around and shot Deputy Hill.

Previously, Will based his post-conviction challenges on a wide variety of issues: forensics, timing, statements Will and Rosario made after the crime, and events that transpired while the government held Rosario in the Harris County Jail. Now, the case concerns evidence that the prosecution kept from Will's trial attorneys.

The instant lawsuit arises out of a successive state habeas application Will filed in 2015. That application raised three claims: (1) Will is actually innocent; (2) the State suppressed two documents from the defense; and (3) trial counsel should have uncovered the documents allegedly suppressed by the State. (Dkt. 57, Ex. 71 at 2–3). Will summarizes the allegedly suppressed material as follows:

> The first was a Harris County Sheriff's Office document, which reveals that the county jail was holding Michael Rosario in a separate section of the Harris County Jail because Rosario had asked a prison gang to kill Rob Will. See Ex.1, Michael Rosario Administrative Separation Review Sheet ("Hit Document"), at 1. Specifically, Rosario's "Administrative Separation Review Sheet" states that Rosario's "Reason For Separation" was that Rosario was "soliciting [the Texas Syndicate prison gang] to make [a] hit on co-def. Robt. Will." *See id.* The Hit Document also indicates that contact was made "w[ith] [the Disruptive Group Unit] to visit w[ith] David Cruz [Texas Syndicate]." *Id.* Copies of Mr. Cruz's undisclosed jail records found in the District Attorney's case file show that the State knew of his connection to Rob Will's case before trial. Compare Ex. 6, David Cruz Administrative Separation Review Sheet Updated 2-10-01, at 1, with Ex. 5, David Cruz Administrative Separation Review Sheet Last Updated 4-27-01, at 1. A second document never disclosed to Mr. Will's defense counsel was a report by Harris County Sheriff's Deputy Patricia Schifani. *See* Ex. 7, Report of Deputy Patricia Schifani ("Schifani Report"). According to her report, Deputy Schifani was returning Harris County jail inmates, including

Michael Rosario, from court on December 7, 2000, three days after the murder.

Rosario looked directly at the mourning badge cover that Deputy Schifani had been wearing in honor of Deputy Hill and said, "Do you know why you are wearing that? . . . I am part of the reason you are wearing it, do you know who I am?" *Id.* Rosario, the son of a Houston Police Department officer, then "pointed at his armband caution text which indicated '\*PROTECTION\*'" and said, "I'm high-profile! Do you know who my father is?" *Id.*

(Dkt. 37 at 3–4). Will's successive habeas proceedings also raised a third item of undisclosed evidence relating to trial witness Cassandra Simmons.[1] Ms. Simmons is a witness who testified at trial that Will told her "he had just shot a policeman." Will claimed that Ms. Simmons did not tell that to the police initially. Will claimed that the prosecution did not divulge that, on the eve of trial, it had showed Ms. Simmons "very gruesome and extremely graphic" photographs of the slain victim. (Dkt. 57, Ex. 71 at 25). Will claimed that the photos "no doubt biased her testimony, causing her to recount a statement that, the evidence shows, was not part of her actual recollection of the events." (Dkt. 57, Ex. 71 at 25). Independent of the allegedly suppressed material, Will also relied on significant evidence to show his innocence.

---

[1]     The state habeas record contains some confusion as to whether the allegations relating to Ms. Simmons were properly before the state courts. Because of how Will had raised concerns about her testimony, the lower state habeas court found that it was a "newly presented claim" which it was "without jurisdiction to consider." (Dkt. 57-74 at 182). The lower court also alternatively denied the claim on the merits. The Court of Criminal Appeals did not comment on the procedural status of any allegations relating to Ms. Simmons. The Court of Criminal Appeals, however, "den[ied] relief" which signals an adjudication on the merits. *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claims merits."). Earlier in this litigation, Respondent questioned whether allegations about Ms. Simmons were properly before the Court. (Dkt. 73 at 29). Respondent, however, does not now argue that a procedural bar prevents consideration of that issue.

On February 5, 2014, the Court of Criminal Appeals entered an order remanding the subsequent state habeas application. The trial-level habeas court considered Will's evidence without ordering an evidentiary hearing.

Both parties submitted proposed findings of fact and conclusions of law in early December 2014. (Dkt. 57-74 at 2–77). For a reason that is not clear from the record, the State submitted amended findings and conclusions on December 31, 2014. (Dkt. 57-74 at 153). On January 26, 2015, the trial court signed the State's 49-page-long proposed recommendation without alteration. (Dkt. 57-74 at 153–201). The Court of Criminal Appeals adopted the lower court's findings and conclusions, with several exceptions. *Ex parte Will*, 2015 WL 13388366, at *1 (Tex. Crim. App. 2015).

Will then began to prosecute a successive habeas petition in federal court. Will filed the instant federal petition in this Court in 2015. The parties' briefing became ripe on September 15, 2017. On September 25, 2017, the Court transferred this action to the Fifth Circuit for a determination of whether the Anti-Terrorism and Effective Death Penalty Act (AEDPA) would allow him to proceed with a successive habeas action. (Dkt. 20). The question remained pending until the Fifth Circuit tentatively authorized successive proceedings on August 5, 2020. *In re Will*, 970 F.3d 536 (5th Cir. 2020).

The parties returned to this Court and extensively briefed the question of whether successive proceedings were appropriate. Once the issue became ripe, this Court entered a Memorandum and Order allowing successive review on March 28, 2023. (Dkt. 79). The briefing has since turned from the procedural question of whether the case should advance to the question of whether Will's claims merit relief.

The Court begins by acknowledging an underlying concern throughout this litigation: The State has not denied that it has kept information from Will. On successive state habeas review, the State did not dispute that the Hit Document and Schifani Report had not been turned over to Will's trial attorneys. (Dkt. 57-72 at 82–83). After returning to federal court, the State turned over even more information that it had secreted away in the prosecutor's "work product folder." Will argues that more material likely remains undisclosed. Will's action seeks additional factual development, in particular an *in camera* review of what material the State is still maintaining in the work product folder.

The Court will first address the legal standards that govern this action and then turn to the question of whether Will has filed this case in a timely manner. The Court will then apply AEDPA to Will's *Brady* claim and discuss the path forward in this case.

## Standard Of Review

AEDPA governs this habeas proceeding. Honoring principles of comity and federalism, Congress enacted AEDPA "to impose significant limits on the discretion of federal courts to grant habeas relief." *Calderon v. Thompson*, 523 U.S. 538, 554 (1998); *see also Danforth v. Minnesota*, 552 U.S. 264, 278 (2008) (observing that the courts have "adjust[ed] the scope of the writ in accordance with equitable and prudential considerations"). AEDPA sets exacting procedural requirements over what a habeas court may consider and establishes strict guidelines about how a court may review it.

If a habeas petitioner has presented his federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. Under AEDPA's rigorous requirements, a federal court reviews "[c]laims presenting questions of law" under Section 2254(d)(1).

*Neal v. Vannoy*, 78 F.4th 775, 783 (5th Cir. 2023). Section 2254(d)(1) is "divided into two categories: the 'contrary to' standard, and the 'unreasonable application' standard." *Id*. A habeas petitioner may only secure relief after showing that the state court's rejection of his claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1)–(2).

Courts review claims presenting questions of fact under two sections of AEDPA. First, a federal habeas court presumes the underlying factual determinations of the state court to be correct, unless the habeas petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003); *Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004) ("As a federal habeas court, we are bound by the state habeas court's factual findings, both implicit and explicit."). Second, a petitioner must show that the state court's ultimate decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Miller-El*, 537 U.S. at 340. "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "Claims presenting mixed questions of law and fact are reviewed under a combination of these provisions; a state court's ultimate legal conclusion is reviewed under Section 2254(d)(1), while the underlying factual findings supporting that conclusion are reviewed under Sections 2254(d)(2) and (e)(1)." *Neal*, 78 F.4th at 783.

In performing the AEDPA review, a federal court generally cannot "develop and consider new evidence." *Shoop v. Twyford*, 596 U.S. 811, 819 (2022). AEDPA limits

"review of factual determinations under § 2254(d)(2)" to "the evidence presented in the State court proceeding," and "review of legal claims under § 2254(d)(1) . . . 'to the record that was before the state court.'" *Id.* (quoting *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011)). Thus, under AEDPA, "[a] federal court may admit new evidence only in two limited situations: Either the claim must rely on a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by this Court, or it must rely on 'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Twyford*, 596 U.S. at 812 (quoting 28 U.S.C. § 2254(e)(2)(A)).

## Limitations Period

AEDPA provides that claims under 28 U.S.C. § 2254 are subject to a one-year statute of limitations. *See* 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four possible events: (1) when "the judgment became final," (2) when "the impediment to filing an application created by the State action in violation of the Constitution and laws of the United States is removed, if the applicant was prevented from filing by such State action," (3) when "the constitutional right asserted was initially recognized by the Supreme Court . . . and made retroactively applicable to cases on collateral review," or (4) when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *Id.* § 2244(d)(1)(A)–(D).

The concerns in this lawsuit arose after Will had completed a full round of state review. Will's conviction became final on November 29, 2004, when the United States Supreme Court denied his petition for a writ of certiorari. *Will v. Texas*, 543 U.S. 1004 (2004). Will filed his first state habeas application during the pendency of his direct appeal, tolling any limitations period until its denial on March 29, 2006. *See* 28 U.S.C. §

2244(d)(2). Under the general timeline for filing a federal petition, the AEDPA limitations period expired on March 29, 2007. *See* 28 U.S.C. § 2244(d)(2).

Will, however, argues that the Court should instead apply the more specific AEDPA subsections which allow the limitations period to run from "the date on which [an] impediment to filing an application created by State action . . . is removed" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(B), (D). Relying on the Fifth Circuit's description of his diligence in this case, Will argues that his *Brady* claim was either undiscovered or unactionable until he came across the material at issue in September 2012. Will contends that AEDPA's one-year clock started on that date, that his state habeas action tolled the limitations period during its pendency from August 26, 2013, to November 25, 2015, and that his federal petition filed on November 27, 2015, was therefore timely.

Respondent, however, contends that "the clock under § 2254(d)(1)(D) does not start when Will knew of the documents; it starts when the documents were available through due diligence." (Dkt. 86 at 31). Respondent, in essence, argues that "the evidence strongly suggests the documents were available in the State's file long before" September 2012. (Dkt. 86 at 32).

Will, however, counters by pointing to language from the Fifth Circuit's earlier opinion in this case detailing his diligence. Albeit in the context of whether Will's diligence would allow for successive federal review, the Fifth Circuit recognized Will's efforts to uncover material:

> Objectively, Will has demonstrated that the withheld records could not have been discovered through due diligence. Here, the prosecutor "pledge[d] to

[the] Court" that she would produce all *Brady* materials prior to trial; Deputy Strickland, who prepared the Hit Document, appeared in court after refusing to comply with a subpoena *duces tecum* and stated that he did not have any documents pertaining to Will's case; Will's habeas counsel had subpoenaed all inmate records concerning Rosario; an attorney in the DA's Office acknowledged that, between *Brady* and the DA's open file policy, the State would have been obligated to disclose the withheld documents prior to trial; and Will had no exigent reason to know that the Hit Document or Schifani Report existed. Accordingly, there was no reason for Will or his counsel to suspect that documents were being withheld or to do more than they did to uncover the withheld evidence.

Trial counsel need not assume the prosecution may be withholding information in order to exercise diligence. The Supreme Court has stated that its "decisions lend no support to the notion that defendants must scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed," and trial counsel should be able to reasonably rely on a prosecutor's open file policy.

*In re Will*, 970 F.3d 536, 542–43 (5th Cir. 2020). Will also relies on the affidavit of his trial prosecutor, Lynne Parsons, who in a 2014 affidavit claimed to "have no recollection of seeing, or having knowledge of, Rosario's Separation Review Sheet or Deputy Shifani's [sic] memorandum, and I cannot explain how these documents are in the State's files today." (Dkt. 82-33). Ms. Parsons conceded that, "had [she] known of their existence," *Brady* would have obligated her to turn over the documents. (Dkt. 82-33). Ms. Parsons' affidavit does not explain when or how the documents came to be in the State's file, and it is unclear how Will could have known of their existence if the trial prosecutor did not.

Respondent asks this Court to assume, contrary to the statements of a State prosecutor, that Will could have uncovered this material far earlier. But the State of Texas has been dilatory in fulfilling its constitutional obligation to turn over favorable material in this case. Even after years of litigation in various courts, the State has only recently

divulged material which it had kept hidden in a "work product" folder. The State's reticence at disclosing information deprives it of any presumption of good faith.

The evidence shows that Will diligently pursued information in this case and diligently acted when the evidence in this lawsuit came to light. The Court rejects Respondent's argument that AEDPA's limitations period bars consideration of this lawsuit.[2]

## Analysis

The substantive issues in this case concern whether the State suppressed favorable material and how that would have changed Will's defense. The state court denied Will's successive state habeas claim based on the suppressed material. As discussed below, the state court's decision was contrary to federal law.

## I.    The Constitutional Requirements of *Brady*

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "There are three components of a true *Brady* violation: (1) the evidence at issue, whether exculpatory or impeaching, must be favorable to the accused; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued." *Canales v. Stephen*s,

---

[2]    The parties engage in significant discussion about whether Will has shown that he is actually innocent, a factor which would allow for equitable tolling if he had not filed in a timely manner. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (finding that a plea of actual innocence can overcome the AEDPA statute of limitations). Because Will filed in a timely manner, the Court does not need to address his actual-innocence arguments. Will previously tried to litigate a substantive actual-innocence argument in these proceedings, but the Court found that it did not comply with AEDPA's stringent limitations of successive habeas review. (Dkt. 79 at 18).

765 F.3d 551, 574 (5th Cir. 2014) (quoting *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999)).

This case turns on the prejudice component of the *Brady* analysis, generally framed as the term "materiality." The Fifth Circuit has observed that "[t]he Supreme Court has imposed four criteria for determining whether evidence is material":

> First, materiality does not require the defendant to demonstrate by a preponderance of the evidence that omitted evidence would have resulted in acquittal. Second, he need not weigh the withheld evidence against the disclosed evidence to show he would have been acquitted by the resulting totality. Third, if evidence is found material, there is no need to conduct a harmless error analysis. Fourth, the withheld evidence should be considered as a whole, not item-by-item. *Kyles v. Whitley,* 514 U.S. 419, 434–37, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The sum of these four guideposts means that to show a due process violation when the state withholds evidence, a defendant need not prove that his trial necessarily would have had a different outcome; a lack of faith in the result is sufficient.

*DiLosa v. Cain*, 279 F.3d 259, 263 (5th Cir. 2002). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles*, 514 U.S. at 433. "A 'reasonable probability of a different result' is shown when the suppression 'undermines confidence in the outcome of the trial.'" *Graves v. Dretke*, 442 F.3d 334, 340 (5th Cir. 2006) (quoting *Kyles*, 514 U.S. at 434).

## II.    Deference to the State Court Decision

Will argues that AEDPA's relegation bar found in section 2254(d) does not preclude *de novo* federal review of his *Brady* claim. "Because *Brady* claims involve mixed questions of law and fact," the Fifth Circuit has held that "§ 2254(d)(1), instead of subpart (d)(2), is applied." *Floyd v. Vannoy*, 894 F.3d 143, 161 (5th Cir. 2018). Will contends that the state court decision was both contrary to and an unreasonable application of federal

law. As discussed below, the Court finds that Will has met his burden under section 2254(d)(1).

### A.    The Lower Court Decision

When deciding a case under AEDPA's deferential scheme, a federal court must "train its attention" on the "last related state-court decision" that provides a "relevant rationale" to a particular claim. *Wilson v. Sellers*, 138 S. Ct. 1188, 1191–92 (2018) (quotation omitted). A federal court should focus "on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and . . . give appropriate deference to that decision." *Sheppard v. Davis*, 967 F.3d 458, 467 (5th Cir. 2020) (quoting *Wilson*, 138 S. Ct. at 1192).

Federal review in this case centers on two different opinions. The lower court issued a recommendation providing a detailed analysis of Will's *Brady* claim. The Court of Criminal Appeals adopted that recommendation—with significant exceptions—and then denied relief. This Court's AEDPA review must take into account the decisions rendered by both the lower court and the Court of Criminal Appeals.

Under Texas procedure, the state district court does not make any final decision in a capital habeas case. "On post-conviction review of habeas corpus applications, the convicting court is the 'original factfinder,' and [the Court of Criminal Appeals] is the 'ultimate factfinder.'" *Ex parte Lane*, 670 S.W.3d 662, 670 (Tex. Crim. App. 2023) (quoting *Ex parte Thuesen*, 546 S.W.3d 145, 157 (Tex. Crim. App. 2017)). The lower court's role is to prepare findings of fact and conclusions of law for the Court of Criminal Appeals' review. The Court of Criminal Appeals will then "defer to and accept a trial judge's findings of fact and conclusions of law when they are supported by the record." *Ex*

*parte Storey*, 584 S.W.3d 437, 439 (Tex. Crim. App. 2019). The Court of Criminal Appeals, however, may exercise its authority "to make contrary or alternative findings and conclusions." *Ex parte Reed*, 271 S.W.3d 698, 727 (Tex. Crim. App. 2008).

Here, the lower habeas court adopted the State's amended proposed findings and conclusions. The lower habeas court's recommendation separated Will's *Brady* evidence into three categories and analyzed each independently, making separate factual findings and legal conclusions for each of the three groups of *Brady* evidence. The lower habeas court discussed each of the three evidentiary categories—"Rosario's Harris County Jail administrative separation review sheet," "Deputy Patricia Schifani's memorandum," and "impeachment evidence regarding Cassandra Simmons"—under different headings and in separate sections. (Dkt. 57-74 at 190, 192, 194). The lower court's recommendation followed a pattern. First, the lower court assumed that the State had suppressed or inadvertently withheld each piece of *Brady* evidence. (Dkt. 57-74 at 190, 192, 194). Second, the lower court found that "the State did not violate *Brady* because [Will] fails to demonstrate, by a preponderance of the evidence that the document was favorable." (Dkt. 57-74 at 190, 191–92, 194). Third, the lower court found that Will "fails to demonstrate, by a preponderance of the evidence, that" each piece of evidence individually "was material." (Dkt. 57-74 at 190–91, 192–93, 194–95).

In short, the lower court's analysis did not intermix its consideration of each claim. The lower court considered each piece of evidence separately, assumed that each was suppressed, but decided that all three were not favorable or material. The lower court did not consider the effect of the three items of suppressed evidence as a whole.

But the lower court did not necessarily have to consider the collective effect of the material. A habeas petitioner is entitled to relief only if he proves every element of the *Brady* analysis. If a habeas petitioner fails to establish any element of *Brady*, a reviewing court need not discuss the other elements. *See United States v. Runyan*, 290 F.3d 223, 245 (5th Cir. 2002). Because the lower court found that each piece of evidence was not favorable, it did not need to continue to a full materiality analysis.

## B.     The Court of Criminal Appeals Decision

The lower court forwarded the case to the Court of Criminal Appeals on January 26, 2015. (Dkt. 57-74 at 200–01). Without any additional briefing from the parties, the Court of Criminal Appeals denied relief on November 25, 2015. The Court of Criminal Appeals decided the case "based upon the trial court's amended findings and conclusions and [its] own review." *Id*. at *1. In doing so, the Court of Criminal Appeals did not adopt all of the lower court's findings and conclusions. Specifically, the Court of Criminal Appeals refused to adopt the findings that the jail review sheet and the Cassandra Simmons evidence were not favorable. *Ex parte Will*, 2015 WL 13388366, at *1 (Tex. Crim. App. 2015). The Court of Criminal Appeals' decision thus apparently left the status of Will's *Brady* claim as follows: the Schifani memorandum itself was possibly not favorable[3] and each piece of evidence was not material when considered individually.

---

[3]      This matter is not clear. The lower court's finding of fact number 76 found, "based on the trial and habeas records, that [Will] does not establish that the alleged newly discovered evidence—the 2000 Schifani memorandum—is either favorable or material with respect to the primary case due to the inaccurate manner in which [he] represents the content of the Schifani Memorandum and the fact that the memorandum is cumulative of evidence previously rejected by the jury at trial." (Dkt. 57-74 at 178). The Court of Criminal Appeals "decline[d] to adopt Factual Findings Number[] 76 . . . to the extent [it] states that the evidence is not favorable under *Brady*." *Will*, 2015 WL 13388366, at *1. But the lower court had also issued a legal conclusion—number 4—that Will "fail[ed] to demonstrate, by a preponderance of the evidence, that the [Schifani memorandum] was favorable." (Dkt. 57-74 at 191). The Court of Criminal Appeals decision left conclusion number 4 intact. With the other two pieces of *Brady* material, the Court of Criminal Appeals had declined to adopt both the finding of fact and the legal conclusion relating to favorableness. It is unclear why the Court of Criminal Appeals would adopt the favorability legal conclusion relating to the Schifani

The Court of Criminal Appeals' decision turned on the materiality discussion. As previously discussed, the Court of Criminal Appeals could only comply with the constitutional requirements set out by the Supreme Court in *Kyles* by assessing materiality "collectively, not point by point." *Banks*, 583 F.3d at 328. The issues presently under consideration turn on whether the Court of Criminal Appeals engaged in the appropriate analysis.

### C.     Alleged Errors in the State Court Decision

The parties' briefing assumes that Will has met *Brady*'s suppression and favorability elements. Specifically, Respondent does not argue that the three pieces of evidence considered by the state courts were not suppressed or not favorable. Relying on section 2254(d)(1)'s contrary-to prong, Will first argues that the Texas courts made at least three critical errors contrary to established Supreme Court precedent: (1) the state courts applied the wrong standard of *Brady* materiality; (2) the state courts applied a 'sufficiency of the evidence' test the Supreme Court has explicitly rejected; and (3) the state courts failed to consider the cumulative effect of the *Brady* evidence Will presented. (Dkt. 83 at 6). The Court will address each of these arguments.

### D.     The Standard Used by the State Court

*Brady*'s familiar materiality standard requires a habeas petitioner to show that "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). Will,

---

memorandum but decline to adopt the factual finding on which the lower court had based its conclusion. It appears that this may be a drafting error, but the parties have not briefed that point. Respondent's answer does not argue that Will has failed to meet *Brady*'s favorability prong with regard to the Schifani memorandum. The parties must provide briefing on the question of whether the lower court's legal conclusion number 4 has any effect in these proceedings.

however, argues that the state court rendered a decision contrary to federal law because it relied on a preponderance-of-the-evidence standard and employed a sufficiency-of-the-evidence test. For the reasons set forth below, the Court agrees that the state decision was contrary to federal law.

### 1. Preponderance-of-the-Evidence Standard

It is clearly established that evidence is material under *Brady* "if there is a *reasonable probability* that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagely*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)). That is, *Brady* materiality is decisively not a preponderance-of-the-evidence test. *Id.* at 434 ("[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."). Yet, the lower court repeatedly included "preponderance-of-the-evidence" language throughout its opinion. With regard to each category of evidence, the state court held that Will "fail[ed] to demonstrate, by a preponderance of the evidence, that" each piece of evidence "was material." (Dkt. 57-74 at 190–91, 192–93, 194–95). At no point did the state court identify the correct reasonable-probability standard mandated by *Kyles*. (Dkt. 57-74).

Respondent argues that the inclusion of the preponderance-of-the-evidence language is merely a reflection of traditional Texas habeas corpus law. Texas courts have long held that "[a]n applicant for a post-conviction writ of habeas corpus bears the burden of proving her claim by a preponderance of the evidence." *Diamond v. State*, 613 S.W.3d 536, 545-46 (Tex. Crim. App. 2020); *Ex parte Torres*, 483 S.W.3d 35, 43 (Tex. Crim. App.

2016); *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002); *Ex parte Thomas*, 906 S.W.2d 22, 24 (Tex. Crim. App. 1995). It is not improper for a state court to apply this general preponderance of evidence standard to a petitioner's factual contentions. *See Holland v. Jackson*, 542 U.S. 649, 654 (2004). However, the legal issue of *Brady* materiality must be decided under the reasonable-probability standard. *Kyles*, 514 U.S. at 434. Consequently, while many Texas habeas courts began their legal analyses with a statement of the generally-applicable preponderance standard, where, as here, a more specific legal standard applies to a portion of the habeas analysis, Texas habeas courts identify and apply the more specific standard. *See, e.g.*, *Ex parte Reed*, 670 S.W.3d 689, 763 (Tex. Crim. App. 2023); *Diamond*, 613 S.W.3d at 545–46; *Ex parte Torres*, 483 S.W.3d at 43; *Ex parte Richardson*, 70 S.W.3d at 870.

The Supreme Court endorsed this approach in *Holland*. There, the state court's opinion included a statement of the general preponderance-of-the-evidence standard, as well as the more specific reasonable-probability standard. *Holland*, 542 U.S. at 654. The habeas petitioner pointed to the state court's preponderance-of-the-evidence language to argue that it applied the wrong standard in assessing the prejudice prong of his ineffective assistance of counsel claim. *Id.* The Supreme Court rejected the petitioner's argument, holding that the state court's general statement of the preponderance standard did not necessarily imply that it had applied the incorrect legal standard. *See id.* at 654–55.

The language in the state court opinion here is readily distinct from that in *Holland*. In *Holland*, the only explicit invocation of the preponderance-of-the-evidence standard was a statement that "[i]n a post-conviction proceeding, the defendant has the burden of proving

his allegations by a preponderance of the evidence." *Id.* at 654 (internal citation omitted).[4] In contrast, the state court here held that "the applicant's *Brady* claim is meritless because the applicant fails to demonstrate, by a preponderance of the evidence, that [the withheld evidence] was material." (Dkt. 57-74 at 190). Unlike the statement from *Holland*, this statement cannot be "reasonably read as addressing the general burden of proof in postconviction proceedings with regard to factual contentions." *Holland*, 542 U.S. at 654. Rather, it is a specific application of the preponderance standard to the materiality prong of Will's *Brady* claim. Further, the Supreme Court's conclusion in *Holland* relied in large part on the fact that the state court had elsewhere explicitly identified the correct reasonable-probability standard for prejudice. *Id.* at 654–55; *see also Woodford v. Visciotti*, 537 U.S. 19, 23–25 (2002) (state court's use of the word "probable" rather than "reasonably probable" in three instances did not mean it erroneously applied preponderance-of-the-evidence standard where it twice stated correct "reasonable probability" standard). Meanwhile, the state court presiding over Will's habeas case never identified the correct standard for materiality.

While the Court "presum[es] that state courts know and follow the law," *Woodford*, 537 U.S. at 24, the Court will not "assume a state court applied legal rules it did not," *Salts v. Epps*, 676 F.3d 468, 480 (5th Cir. 2012). The text of the state court decision in this case

---

[4] The lower court in *Holland* also held that the following two statements implicitly evinced an application of the preponderance standard: (1) "it is asking too much that we draw the inference that the jury would not have believed Hughes at all had Melissa Gooch testified"; and (2) responded had "failed to carry his burden of proving that the outcome of the trial would probably have been different but for those errors." 542 U.S. at 654–55. The Supreme Court held that, to the contrary, these statements did not imply that the state court applied a preponderance-of-the-evidence standard, explaining that (1) the first statement "does not imply any particular standard of probability"; and (2) "use of the unadorned word 'probably' is permissible shorthand when the complete *Strickland* standard is elsewhere recited." *Id.* The *Holland* Court's reasoning related to these two additional statements is not instructive here; Will does not point to any analogous statements in the state court's opinion in his case.

clearly indicates that the court utilized the general preponderance-of-the-evidence habeas standard instead of the reasonable-probability standard that *Kyles* requires.

Accordingly, the Court concludes that Will has shown that the state court's evaluation of *Brady* materiality involved an unreasonable application of clearly established federal law. This reading comports with how others have interpreted similar language in state habeas decisions. *See, e.g.*, *Long v. Hooks*, 972 F.3d 442, 458–60 (4th Cir. 2020), *as amended* (Aug. 26, 2020) (finding that a state court applied a standard contrary to clearly established federal law where it analyzed *Brady* materiality under a preponderance-of-the-evidence standard); *Carusone v. Warden, N. Cent. Corr. Inst.*, 966 F.3d 474, 479–80 (6th Cir. 2020) (granting habeas relief where the state court "effectively replaced the Kyles standard with one more favorable to prosecution"); *Bailey v. Rae*, 339 F.3d 1107, 1118 (9th Cir. 2003) (determining that state court's application of "more probable than not" rather than "reasonable probability" standard in *Brady* analysis was contrary to clearly established Supreme Court precedent).

The state court's misapplication of the preponderance-of-the-evidence standard means that, upon further briefing on the issues, this Court will assess the materiality of Will's *Brady* claims *de novo*. However, for completeness, it is appropriate to address separately Will's additional argument related to the state court's *Brady* materiality analysis.

## 2. Sufficiency-of-the-Evidence Standard

Will contends that the state court considered whether the evidence was sufficient to sustain the jury's verdict and ignored the correct materiality standard. The Supreme Court has instructed that *Brady* materiality "is not a sufficiency of evidence test." *Kyles*, 514 U.S. at 434. As the Supreme Court "made clear in *Kyles*, the materiality inquiry is not

just a matter of determining whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." *Strickler*, 527 U.S. at 290 (citing *Kyles*, 514 U.S. at 434–35). The Fifth Circuit has explained that "[i]t is not the role of a court applying *Brady* to weigh the existing evidence against the excluded evidence" when determining materiality. *DiLosa*, 279 F.3d at 264. Instead, a court must "ask whether the excluded evidence 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *DiLosa v. Cain*, 279 F.3d 259, 264 (5th Cir. 2002) (quoting *Kyles*, 514 U.S. at 435).

Will asserts that the state court's decision committed that error by "improperly weigh[ing] each piece of Mr. Will's *Brady* evidence against the prosecution's inculpatory trial evidence to determine its materiality." (Dkt. 83 at 18). The *Brady* materiality analysis does not exist in isolation from the State's trial evidence. The Supreme Court has indicated that evidence "may not be material if the State's other evidence is strong enough to sustain confidence in the verdict." *Smith v. Cain*, 565 U.S. 73, 76 (2012); *see also United States v. Agurs*, 427 U.S. 97, 111–12 (1976). A court cannot ignore the relationship between the *Brady* evidence and what happened at trial. "The materiality of *Brady* material depends almost entirely on the value of the evidence relative to other evidence mustered by the state." *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) (quotation omitted). In fact, "a thorough examination of the trial evidence . . . provides a starting point for assessing [] materiality." *Banks v. Thaler*, 583 F.3d 295, 321 (5th Cir. 2009). What a court may not do, however, is ask whether "after discounting the inculpatory evidence by the undisclosed evidence" if "there would be enough evidence to sustain the conviction." *Graves v. Dretke*,

442 F3d 334, 340 (5th Cir. 2006). The focus is on "whether in [the] absence [of the *Brady* material] he received a fair trial." *Kyles*, 514 U.S. at 434.

Will argues that the state court applied the materiality prong in a way that functionally amounted to the disavowed review. The state-court decision, however, did not assess whether, considering the *Brady* evidence, the trial evidence was still sufficient to allow for his conviction. Instead, the state court placed the suppressed evidence into the broader context of the trial record to determine its impact. The state court decision engaged in a review permitted by the Supreme Court when it placed the *Brady* evidence into the context of Will's trial.

### E.    Cumulative Effect

A court considering a *Brady* claim must look at the suppressed evidence "collectively, not item by item," *Kyles*, 514 U.S. at 436, and decide whether the cumulative evidence "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678; *see also Wearry v. Cain*, 577 U.S. 385, 394 (2016) ("[T]he state postconviction court improperly evaluated the materiality of each piece of evidence in isolation rather than cumulatively."); *Crawford v. Cain*, 248 F. App'x 500, 504 (2007) ("[T]hough the court may have to go over each piece of evidence item by item, it must ultimately evaluate the cumulative effect of the evidence for purposes of materiality."); *United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004) ("When there are a number of *Brady* violations, a court must analyze whether the cumulative effect of all such evidence suppressed by the government raises a reasonable probability that its disclosure would have produced a different result.").

It is not uncommon for courts to "discuss the significance of each piece of evidence in turn, then consider the importance of the evidence in combination." *Lesko v. Secretary*

*Pennsylvania Department of Corrections*, 34 F.4th 211, 230 (3d Cir. 2022). Here, the lower court reviewed each piece of evidence individually and found that it was not favorable and not material. This initial item-by-item review itself "is not inconsistent with a cumulative analysis. Indeed, the only way to evaluate the cumulative effect is to first examine each piece standing alone." *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 748 (11th Cir. 2010); *see also Kyles*, 514 U.S. at 436 n.10 ("We evaluate the tendency and force of the undisclosed evidence item by item; there is no other way. We evaluate its cumulative effect . . . separately and at the end of the discussion."); *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1310 (11th Cir. 2005) (explaining that the "appropriate methodology [involves] considering each *Brady* item individually, and only then making a determination about the cumulative impact"); *Miller v. Dretke*, 431 F.3d 241, 251 (5th Cir. 2005) (discussing the item-by-item and then cumulative review mentioned in *Kyles*).

But the item-by-item review alone is not enough. Because the Court of Criminal Appeals found that at least two of the pieces of evidence were suppressed and material, it had a constitutional obligation to consider the effect of that evidence as a whole. *See Crawford v. Cain*, 248 F. App'x 500, 504 (5th Cir. 2007) ("[T]hough the court may have to go over each piece of evidence item by item, it must ultimately evaluate the cumulative effect of the evidence for purposes of materiality."). The Court of Criminal Appeals' analysis stopped short and never considered the effect of the *Brady* violations collectively.

Respondent admits that the Court of Criminal Appeals "did not expressly undertake 'cumulative' analysis of all the allegedly suppressed evidence" but nonetheless assumes that it silently had the correct standard in mind and wordlessly applied it in this case. (Dkt. 86 at 81). Respondent relies heavily on *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002)

and its progeny for the proposition that the Court should analyze the ultimate decision of the state court regardless of its specific analysis.

The matter at issue, however, is whether the state court decision was contrary to federal law. "*Neal* does not speak to the standard of review where a state court applies erroneous law." *Salts*, 676 F.3d at 479. When considering a case under AEDPA's "contrary to" prong, a court does not "assume a state court applied legal rules it did not, and then ask whether such rules could still reasonably support the result. That reading . . . would run afoul of the Supreme Court's command that, where a state court does not apply a legal test, 'our review is not circumscribed by a state court conclusion.'" *Salts*, 676 F.3d at 479–80; *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (holding that, where state court analyzed only inadequate performance prong of *Strickland*, review of prejudice prong was *de novo*); *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice . . . , and so we examine this element of *Strickland* claim *de novo*.").

Respondent relies on another Fifth Circuit case, *Crawford v. Cain*, 248 F. App'x 500, 506 (5th Cir. 2007), to argue that this Court should read adherence to constitutional law in the Court of Criminal Appeals' silence. Respondent argues:

> In *Crawford v. Cain*, the Fifth Circuit addressed a substantially similar claim that the state court "did not specifically quote the relevant language from *Kyles* on the question of cumulative impact." 248 F. App'x 500, 506 (5th Cir. 2007). The Court noted that "[t]he state appellate court cited the relevant excerpts from *Brady* and quoted at length from *Kyles* and other cumulative review cases." *Id*. It thus concluded that, "[t]hough the court did not cite the precise language we have to signal its cumulative review, it is plain to us that the inquiry was conducted properly . . . Taken as a whole, the evidence does not support Crawford's contention that the state court was objectively unreasonable in concluding that the suppressed evidence was immaterial." *Id.*

> *Crawford* is particularly instructive here. The CCA's written decision clearly recited and applied the correct prongs of *Brady*. *See* SHCR-03 Supp. At 718 ¶ 57 (listing the three *Brady* elements). It also correctly identified materiality as the correct standard for measuring harm. *Id*. at 718 ¶ 57, 726 ¶ 76, 729–30 ¶ 89, 738 ¶ 3, 740–41 ¶ 5, 743–44 ¶ 7. Similarly, "though the [CCA] did not cite the precise language" to "signal its cumulative review" it is plain that "the inquiry was conducted properly." *Crawford*, 248 F. App'x at 506.

(Dkt. 86 at 92–93). Respondent's argument, however, highlights the reasons for which an assumption that the Court of Criminal Appeals engaged in a cumulative review is unwarranted. The lower court's decision cited the three *Brady* prongs, but did not once cite *Kyles* or mention the relevant cumulative-review cases. The lower court then sectioned off its analysis of each piece of *Brady* evidence individually. This itself was not an error. A state court properly "evaluates the tendency and force of the undisclosed evidence item by item," but it then must follow by "evaluat[ing] its cumulative effect . . . separately and at the end of the discussion." *Kyles*, 514 U.S. at 436 n.10. Nothing in the lower court decision suggested that it took the final step and considered the material as a whole.

Unlike in *Crawford*, the Court of Criminal Appeals did not cite any relevant excerpt from *Brady*, did not quote *Kyles*, and did not mention any cumulative review cases. The lower court had expressly considered each piece of *Brady* material individually, and nothing in the Court of Criminal Appeals' decision suggested any other type of review. The state court's failure to complete the *Brady* materiality analysis was contrary to federal law.

In conclusion, this is not a case where a court merely used imprecise or incomplete language when rendering its decision. This is a case where the state court omitted a crucial component of the review required by Supreme Court precedent. The state court's decision that was based only on individual materiality determinations was "contrary to" clearly

24

established federal law. *See Woods v. Smith*, 660 F. App'x 414, 432 (6th Cir. 2016) ("[T]he state court's assumption that *Brady* requires only individual materiality assessments was 'contrary to' clearly established federal law."); *Barker v. Fleming*, 423 F.3d 1085, 1094 (9th Cir. 2005) (finding a decision contrary to federal law when "[d]espite the clarity of the Supreme Court's directive that a materiality analysis include an assessment of the cumulative effect of undisclosed evidence, the Washington Supreme Court did not conduct such an analysis"); *Castleberry v. Brigano*, 349 F.3d 286, 291–92 (6th Cir. 2003).

### F.   Conclusion of AEDPA review

Because the state court's decision was contrary to federal law, the Court need not decide whether it was also an unreasonable application of that law. *See Salts*, 676 F.3d at 479–80 (where the "state court applies erroneous law," the petitioner "need not also show that the state appeals court's decision involved an 'unreasonable application' of such law"). When a habeas petitioner shows that the state-court decision was contrary to federal law, "a federal court will be unconstrained by § 2254(d)(1)." *Williams v. Taylor*, 529 U.S. 362, 406 (2000). Will is entitled to *de novo* review of his *Brady* claim.

## III.   Factual Development and Lingering Questions

Will asks the Court to allow factual development before proceeding to adjudication of his *Brady* claim, seeking "an opportunity to specifically set out what items of discovery and testimony of witnesses will further development of the merits of his *Brady* claim." (Dkt. 92 at 46). Consistent with Will's request, the Court directs Will to submit, within thirty (30) days of the entry of this Order, a motion for discovery or evidentiary hearing which lists, with specificity, what material he wishes to discover and what testimony he

seeks to present in any evidentiary hearing. The Court will defer ruling on the merits of Will's *Brady* claim until the parties brief whether factual development is necessary.

In the briefing which follows, the Court also expects the parties to address the below-described issues.

### A.    Issue 1: What Remains from the State Habeas Court's Decision?

Will has shown that the state habeas court's decision relating to materiality was contrary to federal law. But a federal court does not necessarily toss the baby out with the bathwater when the reasoning in a state court decision is incomplete. The state habeas court made extensive factual findings which may support a materiality analysis. The parties will brief, with specificity, what remnants of the state habeas court's findings and conclusions require deference under AEDPA. The parties' briefs should include a discussion of whether the lower court's legal conclusion number four (i.e., that Will failed to demonstrate that the Schifani memorandum was favorable) (Dkt. 57-74 at 191) has any effect in these proceedings. *See supra* note 3.

### B.    Issue 2: What May the Court Consider in the *Brady* Materiality Review?

With the Court's holding that the state-court decision was contrary to federal law, federal review will consider the question of *Brady* materiality *de novo*. Will has presented a factually rich narrative in support of his *Brady* claim which includes extensive evidence and argument that far exceeds that presented at trial. Will links some of the evidence directly to the State's suppression of evidence. For example, Will argues that "[d]iscovery of the Hit Document led to the new testimony of Mr. Rosario's would-be hitman, David Cruz." (Dkt. 82 at 52). Other evidence—such as Will's reassessment of the forensic

evidence, reinterpretation of the timetable of events, and reliance a K-9 report—does not appear to flow directly from the suppressed evidence.

Will's successive proceedings have sought to advance two separate claims: his *Brady* claim and an actual-innocence claim. Actual-innocence claims cover broad ground. Actual innocence encompasses an all-inclusive view of all evidence amassed over time. *See House v. Bell*, 547 U.S. 518, 538 (2006) ("*Schlup* makes plain that the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial."). The Fifth Circuit did not authorize Will to proceed on his actual-innocence claim. Echoes of the sweeping actual-innocence review, however, permeate Will's briefing on the *Brady* arguments. Will argues that, when conducting the materiality assessment of the claims he exhausted in state court, the Court should take into account significant evidence he has developed after trial (and which he hopes yet to develop in federal court). The parties' briefing does not neatly separate the breadth of *Brady*'s materiality review from the sweeping review in actual-innocence claims. The parties must define the parameters of *Brady*'s materiality review.

The *Brady* materiality question has a sharper focus than the actual-innocence inquiry. The Supreme Court has described the *Brady* materiality issue as "legally simple but factually complex." *Turner v. United States*, 582 U.S. 313, 324–25 (2017). The Supreme Court has instructed that a court "must examine the trial record, 'evaluat[e]' the withheld evidence 'in the context of the entire record,' and determine in light of that examination whether 'there is a reasonable probability that, had the evidence been

disclosed, the result of the proceeding would have been different.'" *Id.* (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976) and *Cone v. Bell*, 556 U.S. 449, 470 (2009)).

The *Brady* materiality analysis is not a retrial with new evidence, new testimony, and new defensive theories. Even so, the Fifth Circuit has previously considered whether the disclosure of suppressed evidence would have led to other exculpatory evidence. *See, e.g.*, *United State v. Sipe*, 388 F.3d 471, 485 (5th Cir. 2004); *Felder v. Johnson*, 180 F.3d 206, 212 (5th Cir. 1999). The relationship between the suppressed material and other evidence, however, cannot be "mere speculation." *See Wood v. Bartholomew*, 516 U.S. 1, 7 (1995). Some courts ask if the *Brady* evidence would "lead directly" to the other evidence on which a habeas petitioner relies. *Barton v. Warden, Southern Ohio Correctional Facility*, 786 F.3d 450, 465 (6th Cir. 2015) (quotation omitted); *see also East v. Scott*, 55 F.3d 996, 1004 (5th Cir. 1995) (asking whether the *Brady* material "would have led to" the petitioner's other evidence).

The Supreme Court has instructed courts to evaluate materiality "in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112 (1976). The parties must explain what "the entire record" means in this case. The parties' briefing has put forward a factually dense narrative that, in many ways beyond just the material which the State suppressed, differs from the case put before jurors. The parties must brief whether, under a *de novo* materiality review, the Court may do more than plug the suppressed material into the testimony, evidence, and defensive theories that came before jurors. The parties must specify what the Court may consider when adjudicating *Brady*'s materiality prong, particularly in contrast to the parties' extensive briefing on Will's actual-innocence arguments.

## C.     Issue 3: May the Court Consider Newly Turned-Over Material in this Action?

The State of Texas turned over material from the prosecutor's work product folder after the Fifth Circuit had authorized successive proceedings on discrete issues. The extremely late disclosure of information has placed Will in an awkward procedural posture. Will likely cannot insert a new claim into these proceedings.[5] Will argues that the long-suppressed material merely supplements his federal claim. Yet, as discussed above, it is not clear what role evidence beyond the trial record and specific evidence underlying a claim plays into *Brady*'s materiality review.

This is not the first case which has made apparent that the Harris County District Attorney's Office has used a "work product folder" as a means of preventing criminal defendants from litigating on a level playing field. *See, e.g.*, *Prible v. Davis*, 2020 WL 2563544, at *25 n.21 (S.D. Tex. 2020) (finding that "the work-product doctrine cannot excuse [the Harris County District Attorney's Office] efforts to hide relevant and exculpatory information from the defense"), *vacated sub nom. Prible v. Lumpkin*, 43 F.4th 501 (5th Cir. 2022). The State of Texas withheld evidence from Will for more than two decades throughout extensive litigation. Had the State complied with its constitutional obligations, Will could have used the new evidence at trial, relied on it in his first two state habeas applications, presented it in his initial federal petition, and included it in his motion for leave to file a successive petition. Respondent gives no explanation for withholding the

---

[5]        The mandate rule generally restricts this Court's review to the matters sent down from the circuit court. *See United States v. Lee*, 358 F.3d 315, 321 (5th Cir. 2004) ("[T]he mandate rule compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."). Yet, it does not bar claims based on newly discovered evidence. *See Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019). The more-specific AEDPA successive-petition provisions bar the introduction of new habeas claims into these proceedings. *See* 28 U.S.C. § 2244(b)(3)(A).

material until this late stage of the proceedings. The State of Texas' failure to honor the constitutional requirements of the *Brady* decision is deeply troubling.

The State of Texas revealed material only when the procedural posture was such that Will could not make use of it in his initial or successive state habeas proceedings. Respondent blames the current procedural entanglement on Will. Respondent says that "Will himself has chosen to bring the new evidence in a posture that renders it unreviewable." (Dkt. 86 at 110 n.29). Respondent goes on to assert that "[t]here was no rule stopping [Will] from filing a third federal petition that would run concurrently with his second petition," even though "there would undoubtedly be procedural hurdles, such as seeking authorization to file another successive petition." (Dkt. 86 at 110, n.29). Respondent proposes a procedure that further complicates the proceedings and wastes judicial resources, particularly when the newly disclosed material covers the same themes as the evidence properly before the Court. [6]

The briefing to date does not provide sufficient clarity as to what role the newly disclosed evidence may have in these proceedings. The parties must provide additional briefing, supported by legal precedent, describing what role newly turned over or newly developed evidence could have in the *Brady* materiality analysis. With that briefing, the parties should discuss whether it may be appropriate to stay any *de novo* adjudication of the properly presented *Brady* claim to allow the state courts to consider the newly divulged evidence in the first instance.

> **D.      Issue 4: Do the Circumstances Warrant *In Camera* Review of the Work Product Folder?**

---

[6]      Respondent "agrees that work-product evidence first turned over by the State in June 2022 would not be barred by § 2254(e)(2)." (Dkt. 86 at 106).

When the State recently turned over material which had recently been withheld, it still did not disclose the full contents of the work product folder. The State has turned over some redacted material during these proceedings which Will uses to supplement his federal claim. Will has asked for discovery of the work product folder, possibly *in camera*. If Will resumes his request for disclosure of material remaining in the prosecutor's work product folder, he should supply the Court with a proposed discovery order which will provide for *in camera* review. In addition, the parties will provide the Court with a detailed explanation of what material has already been turned over from that folder, to preclude redundancy.

## Conclusion

For the reasons discussed above, the Court finds that the state court's decision regarding Will's *Brady* claim was contrary to federal law. Will is entitled to *de novo* review of the materiality of his *Brady* evidence.

The Court expresses concern about the time it has taken to arrive at this point in the litigation. Over two decades have passed since Will's conviction. It took the State over ten years following Will's conviction to turn over the relevant *Brady* material. The Court expresses concern about any future delay caused by the government's failure to comply with its constitutional obligations.

Will shall file any motion for factual development within **thirty (30) days** from the entry of this Order. Respondent may file any opposition within **thirty days (30)** thereafter. Will may file a reply within **fourteen (14)** days. The Court expects that the parties' briefing will address the concerns raised in his Order. The Court may extend these deadlines upon a sufficient showing of good cause.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 3rd of April, 2024.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE